```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 11-22216-Civ-MOORE
                                   (10-20122-Cr-MOORE)
                              MAGISTRATE JUDGE P. A. WHITE

ORELVY CARRERO-GOMEZ,      :

       Movant,            :

v.                        :              REPORT OF
                                    MAGISTRATE JUDGE
UNITED STATES OF AMERICA, :

       Respondent.        :
_____
```

## Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking the constitutionality of his conviction and sentence following entry of a guilty plea in case no. 10-20122-Cr-Moore.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion with supporting memorandum (Cv-DE#1), the government's response thereto with exhibits (Cv-DE#9), the movant's reply thereto (Cv-DE#10), the government's sur-reply (Cv-DE#11), and the movant's response thereto (Cv-DE#12), as well as, the Presentence Investigation Report (PSI), the court's Statement of Reasons, and all pertinent portions of the underlying criminal file.

<u>Claims</u>

In his initial motion (Cv-DE#1), the movant raises the following three grounds for relief:

1.  He was denied effective assistance of counsel, where his lawyer failed to: (a) object to the imposition of a statutory minimum mandatory term of imprisonment; (b) object to the criminal history points assessed in the PSI; (c) request that the court disregard two prior convictions in fashioning an advisory guideline sentence; and, (d) request a sentence below the statutory mandatory minimum. (Cv-DE#1:Memo:12).

2.  He was denied effective assistance of counsel, where his lawyer failed to argue that his due process rights were being violated when the court imposed the statutory mandatory minimum term of imprisonment. (Cv-DE#1:Memo:17).

3.  He was denied effective assistance of counsel, where his lawyer failed to inform him that his plea carried a risk of deportation. (Cv-DE#1:Memo:20).

Construing movant's arguments liberally as afforded *pro se* litigants[1], in his traverse (Cv-DE#10), the movant raises for the first time, the following additional grounds for relief:

4.  He was denied effective assistance of counsel, where his lawyer failed to argue that the movant was entitled to application of the safety valve provision of the guidelines, which would have enabled him to obtain a sentence below the statutory minimum. (Cv-DE#10:2).

5.  He was denied effective assistance of counsel, for failing to consult with movant regarding the prosecution of a direct appeal until after the 10-day period had expired. (Cv-DE#10:2-3).

---

[1] <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).

<u>Procedural History</u>

Briefly, on March 2, 2010, the movant was charged by Indictment with attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§841(a)(1), (B)(1)(A), and 846. (Cr-DE#7). On May 10, 2010, the movant plead guilty as charged, without the benefit of a negotiated, written plea agreement. (Cr-DE#45:1,6). At the Rule 11 proceedings, conducted by United States Magistrate Judge Andrea M. Simonton, the movant acknowledged that he faced a statutory minimum of 10 years and up to a term of life in prison. (<u>Id</u>.:5). The movant further acknowledged that he had reviewed the Indictment with counsel, applicable defenses thereto, including the defense of entrapment, and was fully satisfied with counsel's representation and advice. (<u>Id</u>.:6,18-20). The movant also stated that there were no agreements of any kind with the government. (<u>Id</u>.). He denied being coerced or threatened to change his plea, and acknowledged that no one had made any promises or assurances of any kind to induce him to change his plea. (<u>Id</u>.:7). Morever, pertinent to this §2255 proceeding, the movant was advised and acknowledged that the guilty plea may affect his residency and immigration status, and could subject him to deportation proceedings if he was not a U.S. citizen. (<u>Id</u>.:7).

The movant then agreed with the government's proffer of facts, which revealed that on February 2nd, 2010, a confidential informant "CI") advised the Federal Bureau of Investigation ("FBI") that the movant, a long distance trucker, was interested in transporting narcotics. (<u>Id</u>.:8). Later, a recorded February 9th, 2010 meeting was had between the CI, the movant, and an FBI undercover agent, as well as, a Miami-Dade Police Department task force officer, both of whom were posing as narcotics traffickers. (<u>Id</u>.). At that time,

3

movant stated he had previously and continued to transport narcotics. (Id.:8). He then expressed interest in transporting 10 kilograms of cocaine to New York, in exchange for $2,500 per kilogram of cocaine. (Id.:8).

On February 16th, 2010, the undercover agent spoke with the movant, who stated he was in Tampa, but would be ready and available to transport the drugs two days later, on February 18th, 2010. (Id.:9). On that day, the movant met with the agent and task force officer at a warehouse in the Southern District of Florida. (Id.). During this recorded meeting, movant reiterated his desire to transport the drugs, recalled prior smuggling ventures, and detailed how the drugs would be concealed in his tractor. (Id.). Additionally, movant provided the agent with his driver's license so that the agent could have his address in the event anything happened to the cocaine load. (Id.). Thereafter, movant was provided with 10 kilograms of sham cocaine which he counted and then instructed the agent to place in the back seat of movant's vehicle. (Id.). Immediately following this event, movant was arrested. (Id.). After being advised of and waiving his constitutional rights, movant admitted that he attempted to smuggle 10 kilograms of cocaine, and further consented to a search of his Tampa residence. (Id.:9-10). A search of the residence revealed large quantities of marijuana. (Id.).

After the foregoing stipulated proffer of facts was completed, movant next acknowledged discussing with his attorney how the U.S. Sentencing Guidelines might apply in this case. (Id.:12). He confirmed that his sentence would not be determined until after a PSI was prepared and the advisory guideline range computed. (Id.). The movant further acknowledged that the court may depart from the applicable advisory guideline range and impose a sentence that is

4

either more or less severe than the guideline sentence. (Id.:13). The movant agreed that the court was required to consider the advisory guideline sentence, but was not bound to impose such a sentence. (Id.). Rather, he acknowledged the court was permitted to impose a sentence that is more or less severe than the recommended guideline range, and in fact, the court had the authority to sentence him up to the statutory maximum. (Id.). Finally, the movant confirmed that by entering the plea he was giving up his right to trial by jury, to present a defense, and to hear and confront witnesses. (Id.:13-15). After a thorough colloquy was had, the court found the plea was knowing and voluntary. (Id.:16-17). A Report (Cr-DE#26) was thereafter entered memorializing the Rule 11 colloquy, which was later adopted by the district court (Cr-DE#27) on June 18, 2010.

Prior to sentencing, a Presentence Investigation Report ("PSI") was prepared and it extensively detailed the pertinent facts of the case and movant's role in the offense. Further, the PSI set the movant's initial base offense level at 32, pursuant to U.S.S.G. §2D1.1(a)(5), because the offense involved at least 5 kilograms, but less than 15 kilograms of cocaine. (PSI ¶14). Three levels were then removed from the base offense level, pursuant to U.S.S.G. §3E1.1, based on the movant's timely acceptance of responsibility, resulting in a total base offense level 29. (PSI ¶¶21-23).

Next, the probation officer determined that the movant had a total of two criminal history points, resulting in a criminal history category II. (PSI ¶29). Statutorily, the movant faced a minimum of 10 years and up to life in prison for violation of 21 U.S.C. §841(b)(1)(A). (PSI ¶60). Because the movant had two criminal history points, he was ineligible for application of

5

U.S.S.G. §5C1.2, the safety valve provisions of the guidelines, which would have enabled him to obtain a sentence without regard to any statutory minimum mandatory. (PSI Addendum). Based on a total offense level 29 and a criminal history category II, the movant's guideline range was initially set at 97 to 121 months. (PSI ¶60). However, pursuant to U.S.S.G. §5G1.1(c)(2), the guideline range was increased to 120 months, the statutory minimum mandatory term of imprisonment. (Id.). Prior to sentencing, movant's counsel filed objections to the PSI, noting that any admissions by movant that he had previously transported narcotics was incorrect and "mere puffery." (Cr-DE#29).

On July 8, 2010, the movant appeared for sentencing. (Cr-DE#41). At that time, when asked by the court if the probation officer's calculation of an offense level 29 and a criminal category II was correct, movant's counsel and the government responded in the affirmative. (Id.:6). The movant was then provided with the opportunity to allocute, at which time he apologized to the government and his family for his actions. (Id.).

The court then noted on the record that it had considered the statement of the parties, the PSI which contained the advisory guideline range, as well as, the statutory factors, and then sentenced movant to the statutory minimum mandatory term of 120 months in prison, followed by 5 years supervised release. (Id.:6-7; Cr-DE#32). In response to the court's inquiry, the movant acknowledged that he was aware that he had a right to appeal his sentence. (Cr-DE#41:8). When asked by the court if he wanted to pursue a direct appeal, the movant responded in the negative. (Id.). The judgment was thereafter entered by the Clerk on July 9, 2010. (Cr-DE#32). No direct appeal was ever filed. (Cv-DE#1).

Thus, for purposes of the AEDPA's one-year federal limitations period, the judgment of conviction in the underlying criminal case became final at the latest on July 23, 2010, fourteen days after the entry of judgment, when time expired for filing a notice of appeal.[2] At the latest, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than July 23, 2011. <u>See</u> <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986). The initial motion to vacate (Cv-DE#1) was timely filed less than one year later on June 8, 2011.[3]

In his traverse, filed September 9, 2011, the movant appears to raise additional claims and/or arguments, as listed above. (Cv-DE#10). Because this pleading was filed well beyond the expiration of the one year limitations period, and raised new claims, nos. four and five, as listed above, which do not arise from the same circumstances as raised in the original motion to vacate, those claims are time-barred. <u>See</u> <u>Mayle v. Felix</u>,[4] ___ U.S. ____, 125

---

[2]Where, as here, a defendant does not pursue a direct appeal, his conviction becomes final when the time for filing a direct appeal expires. <u>Adams v. United States</u>, 173 F.3d 1339, 1342 n.2 (11ᵗʰ Cir. 1999). In 2009, the time for filing a direct appeal was increased from 10 to 14 days days after the judgment or order being appealed is entered. <u>Fed.R.App.P.</u> 4(b)(1)(A)(i). The judgment is "entered" when it is entered on the docket by the Clerk of Court. <u>Fed.R.App.P.</u> 4(b)(6). Moreover, now every day, including intermediate Saturdays, Sundays, and legal holidays are included in the computation. <u>See</u> <u>Fed.R.App.P.</u> 26(a)(1).

[3]<u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

[4]In <u>Mayle</u>, the Supreme Court held that "[A]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in time and type from those in the original pleadings set forth." <u>Mayle</u>, 125 S.Ct. at 2566. The Supreme Court explained that relation back is only allowable "when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." <u>Id</u>. at 2571 (citations omitted).

S.Ct. 2562 (2005) and <u>Davenport v. United States</u>,[5] 217 F.3d 1341 (11 Cir. 2000); <u>see also</u>, <u>Pruitt v. United States</u>, 274 F.3d 1315 (11 Cir. 2001).

In order for untimely claims to be considered, they must arise from the same facts as the timely filed claims, not from separate conduct or occurrence. <u>See</u> <u>Dean v. United States</u>, 278 F.3d 1218, 1222 (11th Cir. 2002); <u>Fed.R.Cr.P.</u> 15(c). The untimely claims must have more in common with the timely filed claims than the mere fact that they arose out of the same trial and sentencing proceedings. <u>See</u> <u>Pruitt v. United States</u>, 274 F.3d at 1319, <u>citing</u>, <u>United States v. Pittman</u>, 209 F.3d 314 (4th Cir. 2000); <u>United States v. Duffus</u>, 174 F.3d 333 (3rd Cir.), <u>cert. den'd</u>, 528 U.S. 866 (1999); <u>United States v. Craycraft</u>, 167 F.3d 451 (8th Cir. 1999).

Notwithstanding, the Eleventh Circuit has held that the limitations period may be equitably tolled when a movant's timely filing of a motion to vacate is impeded by extraordinary circumstances beyond her control and unavoidable even with due diligence. <u>See</u> <u>Outler v. United States</u>, 485 F.3d 1273, 1280 (11th Cir. 2007)(<u>quoting</u> <u>Steed v. Head</u>, 219 F.3d 1298, 1300 (11th Cir. 2000); <u>Helton v. Secretary for Dept. of Corrections</u>, 259 F.3d 1310, 1312 (11 Cir. 2001)(stating that "[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his

---

[5]In <u>Davenport</u>, the Court of Appeals held that a claim which was not part of the original timely motion to vacate does not relate back to the original claims and is time-barred if it does not arise out of the same conduct, transaction or occurrence. However, in a post-<u>Davenport</u> decision, the Eleventh Circuit has explained that "[W]hen the nature of the amended claim supports specifically the original claim, the facts there alleged implicate the original claim, even if the original claim contained insufficient facts to support it. One purpose of an amended claim is to fill in facts missing from the original claim." <u>United States v. Dean</u>, 278 F.3d 1218, 1221-1222 (11th Cir. 2003).

petition."), <u>cert</u>. <u>denied</u>, ____ U.S. ____, 122 S.Ct. 1965 (2002); <u>Sandvik v. U.S.</u>, 177 F.3d 1269, 1270 (11 Cir. 1999). No such showing has been made here. <u>See</u> <u>Diaz v. Sec'y for Dep't of Corr.</u>, 362 F.3d 702, n.7 (11th Cir. 2004). Further, there is nothing of record to suggest that the movant is entitled to equitable tolling. The new claims could have been raised before July 23, 2011, within the federal one-year limitations period, and not for the first time in a reply to the government's response.

As will be recalled, the movant had one year from the time his conviction became final to timely raise all cognizable claims. The new claims raised in the movant's traverse, which was filed well over one year from the time his conviction became final, do not relate back to the timely filed motion and are thus time-barred. From the record before this court it does not appear that the movant made any efforts to timely present the claim to this court.[6] Consequently, at a minimum, claims four and five, as listed above are untimely. Nevertheless, they are addressed briefly *infra*, as the movant cannot prevail on the merits.

### Standard of Review

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner

---

[6]Petitioner attempts to "morph" his new claims by commingling them with those timely raised. However, they are new facts and circumstances not previously raised and thus do not relate back to the timely filed initial motion.

or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. To obtain this relief on collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)(rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). See also Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous").

It should further be noted that the party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the §3553(a) factors. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). The Eleventh Circuit recognizes "that there is a range of reasonable sentences from which the district court may choose," and ordinarily expect a sentence within the defendant's advisory guideline range to be reasonable. Id.

A. Guilty Plea Principles

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea.

Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). See also United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n. 13 (1976). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005); United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003), cert. den'd, 540 U.S. 1149 (2004), attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986). To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Id. See United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005)(per curiam); United States v. Moriarty,

429 F.3d 1012 (11th Cir. 2005).[7]

In other words, a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. <u>Mabry v. Johnson</u>, 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. <u>Mabry</u>, 467 U.S. at 509, <u>quoting</u>, <u>Brady v. United States</u>, 397 U.S. at 748. If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. <u>Mabry</u>, 467 U.S. at 509. <u>See also</u> <u>Santobello v. New York</u>, 404 U.S. 257 (1971).

B. <u>Ineffective Assistance of Counsel Principles</u>

Because the movant asserts in his petition that counsel rendered ineffective assistance, this Court's analysis begins with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense." U.S. CONST. amend. VI. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a

---

[7]In <u>Moriarty</u>, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

<u>Id</u>.

reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id. at 689. This two-part standard is also applicable to ineffective-assistance-of-counsel claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 57-59 (1985).

Generally, a court first determines whether counsel's performance fell below an objective standard of reasonableness, and then determines whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Padilla v. Kentucky, ___ U.S. ___, ___, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010). In the context of a guilty plea, the first prong of Strickland requires petitioner to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would have entered a different plea. Hill, 474 U.S. at 56-59. If the petitioner cannot meet one of Strickland's prongs, the court does not need to address the other prong. Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1100 (11th Cir. 2007); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

However, a defendant's sworn answers during a plea colloquy must mean something. Consequently, a defendant's sworn representations, as well as representation of his lawyer and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). See also Kelley v. Alabama, 636 F.2d 1082, 1084 (5th Cir. Unit B. 1981). Moreover, a criminal defendant is bound by his sworn assertions and cannot

rely on representations of counsel which are contrary to the advice given by the judge. See Scheele v. State, 953 So.2d 782, 785 (Fla. 4 DCA 2007)("A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences."); Iacono v. State, 930 So.2d 829 (Fla. 4 DCA 2006)(holding that defendant is bound by his sworn answers during the plea colloquy and may not later assert that he committed perjury during the colloquy because his attorney told him to lie).

As will be demonstrated in more detail *infra*, the movant is not entitled to vacatur on any of the claims presented. When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner due process of law. The petitioner therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

<u>Discussion</u>

In claim one, movant asserts he was denied effective assistance of counsel on numerous specified grounds. (Cv-DE#1:Memo:1-12).

14

In **claim 1(a)**, movant asserts counsel was ineffective for failing to object to the imposition of a statutory minimum mandatory term of imprisonment. (Cv-DE#1:Memo:12-15). In related **claim 1(d)**, movant faults counsel for failing to request a sentence below the statutory minimum. (<u>Id</u>.).

Sentencing is a two step process, requiring (1) the correct calculation of the guideline range and (2) the consideration of the 18 U.S.C. §3553(a) factors. <u>United States v. Talley</u>, 431 F.3d 784, 786 (11th Cir. 2005)(*per curiam*). Even after the remedial holding of <u>United States v. Booker</u>,[8] the district court is bound by the statutory mandatory minimums. <u>See</u> <u>United States v. Castaing-Sosa</u>, 530 F.3d 1358, 1362 (11th Cir. 2008); <u>see also</u> id. ("<u>Booker</u> made advisory the Sentencing Guidelines, not statutory mandatory minimums enacted by Congress."); <u>United States v. Brehm</u>, 442 F.3d 1291, 1300 (11th Cir. 2006)(*per curiam*); <u>United States v. Shelton</u>, 400 F.3d 1325, 1333 n.10 (11th Cir. 2005). Thus, just as before <u>Booker</u>, a court may sentence below a statutory minimum only when authorized by statute.

The court finds it significant that only two provisions of 18 U.S.C. §3553 authorize the district court to sentence a defendant below the statutory mandatory minimum. <u>United States v. Brehm</u> at 1361. Specifically, §§3553(e) & (f) allows a sentence below a mandatory minimum "so as to reflect a defendant's substantial assistance" to law enforcement, or by application of the safety valve provisions of the guidelines, if the court finds the movant meets the five criteria under the guidelines. Among these criteria is a requirement that the defendant "truthfully provide [ ] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." <u>Id</u>. The other

---

[8]<u>United States v. Booker</u>, 543 U.S. 220, 229 (2004).

sub-sections of 18 U.S.C. §3553 "make[ ] no mention of statutory mandatory minimum sentences, much less purport [ ] to give the district court the authority to impose a sentence below the applicable statutory mandatory minimum sentence." United States v. Castaing-Sosa, 530 F.3d at 1361.

"Examining the language and structure of § 3553, it is [thus] ... readily apparent that Congress chose to impose statutory mandatory minimum sentences and then provide only limited exceptions." Castaing-Sosa, 530 F.3d at 1361-62. In so doing, Congress selected a number of factors, with an emphasis on assistance to law enforcement, which alone permit a sentence below the mandatory minimum. To read Booker as authorizing a yet-lower sentence on the basis of other factors would do significant damage to the statutory scheme. See United States v. Ahlers, 305 F.3d 54, 62 (1st Cir. 2002)("Congress chose to enact statutory minimum sentences and allow only one way out: cooperation with law enforcement. Reworking this balance would not only undermine legislative intent but also threaten the integrity of the system of mandatory minimum sentencing so prized by Congress."); see also United States v. Williams, 474 F.3d 1130, 1132 (8th Cir. 2007) (citing Ahlers, 305 F.3d at 61-62); Booker, 543 U.S. at 264 (The remedial Booker opinion seeks to "remain [ ] consistent with Congress' initial and basic sentencing intent."). Thus, "[i]f a district court imposes a sentence below the statutory minimum in part so as to reflect the history and characteristics of the defendant, ... the court exceeds the limited authority granted by §3553(e)." Id. (internal citation omitted).

On the record before this court, the movant cannot establish either deficient performance or prejudice under Strickland. As noted above, the court did not have the discretion to depart below the statutory, mandatory minimum term of imprisonment. Further, as will be explained in more detail infra, the movant did not qualify

16

for application of the safety valve provision of the guidelines.
Thus, the sentence imposed was proper. Any further argument by
counsel for a downward variance would have failed. Consequently, he
is entitled to no relief on this claim.

In **claim 1(b)**, the movant asserts that counsel was ineffective
for failing to object to the two criminal history points assessed
in the PSI at paragraphs 26 and 28. (Cv-DE#1:Memo:12). In related
**claim 1(c)**, movant also faults counsel for failing to request in
the alternative that the court disregard these criminal history
points when fashioning a reasonable sentence. (Id.:12-15).

It should first be noted that to the extent the movant means
to argue again that counsel should have stated that these points
should not have been considered by the judge in light of the
advisory nature of the guidelines, that argument fails for the
reasons previously expressed in this Report in relation to claims
1(a) and 1(d) above.

The movant's challenge to the points assessed as violative of
the guidelines also warrants no relief. The Sentencing Guidelines,
U.S.S.G. §§4A1.1 and 4A1.2 generally govern the number of criminal
history points assessed for a defendant's previous crimes. See
generally U.S.S.G. §§4A1.1, 4A1.2. Under §4A1.1(c), one criminal
history point should be assessed for a "prior sentence" that was
not otherwise counted under another provision. U.S.S.G. §4A1.1(c).
Section 4A1.2(a) defines the term "prior sentence" as "any sentence
previously imposed upon adjudication of guilt, whether by guilty
plea, trial, or plea of nolo contendere." U.S.S.G. §4A1.2(a).
Pursuant to §4A1.2(f):

> Diversion from the judicial process without a
> finding of guilt (e.g., deferred prosecution)
> is not counted. A diversionary disposition
> resulting from a finding or admission of

17

> guilt, or a plea of nolo contendere, in a
> judicial proceeding is counted as a sentence
> under §4A1.1(c) even if a conviction is not
> formally entered.

U.S.S.G. §4A1.2(f). Further, the Eleventh Circuit has held that even if a charge does not constitute a "prior sentence" under §4A1.2(a), because the state court withheld adjudication, the offense still warrants a criminal history point as a diversionary disposition under §4A1.2(f) if the defendant pled nolo contendere to the charge. See Ayuso v. United States, 361 Fed.Appx. 988, 991 (11th Cir. 2010)(citing United States v. Rockman, 993 F.2d 811, 813-14 (11th Cir. 1993)).

PSI ¶26-Prior Conviction for Burglary, Case No. 99-16010CFANO. The movant maintains that this burglary conviction, should not have been assessed a criminal history point, pursuant to U.S.S.G. §4A1.1(c). The PSI narrates that on September 2, 1999, the petitioner was charged with burglary. (PSI ¶26). On April 24, 2000, he was sentenced to 18 months probation, which was terminated on April 6, 2001 by the court. (Id.).

Under §4A1.1(c), one criminal history point should be assessed for a "prior sentence" that was not otherwise counted under another provision. U.S.S.G. §4A1.1(c). The movant that had his sentence for burglary been imposed 65 days earlier it would not have been countable under U.S.S.G. §4A1.2(e)(2). (Cv-DE#1:13). This is so because §4A1.2(e)(2) provides that a sentencing court must count any sentence of one year and one month or less that has been imposed within ten years of the defendant's commencement of the instant offense. See U.S.S.G. §4A1.2(e)(e)(1)-(2). Because the burglary conviction was imposed on April 24, 2000, and the instant offense commenced on February 18, 2010, it was within the ten year period and thus properly considered in determining that it should receive a criminal history point. Consequently, counsel was not

deficient for failing to pursue this nonmeritorious claim at sentencing. As a result, the movant cannot satisfy <u>Strickland</u> and is entitled to no relief on this claim.

    <u>PSI ¶28-Prior Conviction for Petit Theft, Case No. 09-0908372-MM</u>. The movant further argues in the alternative that this prior petit theft conviction, should not have been assessed a criminal history point, pursuant to U.S.S.G. §4A1.1(c), because it was a relatively "minor" offense. He further argues that it is excludable, pursuant to U.S.S.G. §4A1.2(c),[9] because it is similar to an "insufficient funds check" conviction and therefore should not have been assessed a criminal history point. (Cv-DE#1:Memo:15).

    The Eleventh Circuit, however, has rejected the argument that a prior petit theft conviction cannot be assessed a criminal history point. <u>See Ayuso v. United States</u>, 361 Fed.Appx. 988, 991 (11th Cir. 2010)(<u>citing</u> <u>United States v. Rockman</u>, 993 F.2d 811, 813-14 (11th Cir. 1993)). Moreover, the Eleventh Circuit has held that even if a charge does not constitute a "prior sentence" under §4A1.2(a), because the state court withheld adjudication, the offense still warrants a criminal history point as a diversionary disposition under §4A1.2(f) if the defendant pled nolo contendere to the charge. Review of the state court on-line docket in the challenged petit theft offense reveals that the movant entered a no contest plea, and a judgment was entered, albeit, with a withhold adjudication.[10] Thus, to the extent movant argues that the withhold of adjudication for the petit theft conviction precludes the assessment of a criminal history point, that argument fails. <u>See United States v. Fernandez</u>, 234 F.3d 1345 (11th Cir. 2000)(finding

---

    [9]This provision of the guidelines provides in pertinent part that misdemeanor and petit offenses are counted unless the prior offense was similar to, among other enumerated offenses, of one related to passing an insufficient funds check. U.S.S.G. §4A1.2(c)(1).

    [10]<u>See</u> <u>http://www.pascoclerk.com/public-online-services.asp</u>.

no contest plea, where adjudication withheld qualifies as conviction for purposes of calculating guidelines); <u>see also</u> <u>United States v. Rockman</u>, 993 F.2d 811, 813-14 (11th Cir. 1993). Thus, counsel was not ineffective for failing to pursue this nonmeritorious argument.

Moreover, to the extent he argues that the petit theft conviction is similar to the insufficient funds offense listed in the guidelines as excludable, that argument also warrants no relief. Under Florida law, petit larceny/theft of the first degree, punishable as a misdemeanor, requires a showing that the property stolen is valued at $100 or more, but less than $300. <u>See</u> <u>Fla.Stat.</u> 812.04(2)(e). Florida's worthless check statute provides that "[i]t is unlawful for any person...to draw, make, utter, issue, or deliver to another any check, or other written order on any bank or depository, or to use a debit card, for the payment of money or its equivalent, knowing at the time of the drawing...or at the time of using the debit card, that the maker or drawer thereof has not sufficient funds on deposit in or credit with such bank or depository with which to pay the same or presentation." <u>Fla.Stat.</u> §832.05(2)(a). It is evident that the petit theft offense here is not similar to the worthless check offense. Consequently, this argument also fails, and as a result, no showing has been made that counsel was deficient for failing to pursue this frivolous argument. Thus, movant is entitled to no relief on this basis.

It should further be noted that the movant's argument that counsel's failure to challenge these offenses precluded him from application of the safety valve provisions of the guidelines, also warrants no relief for the reasons previously expressed in this Report, as well as, for the reasons explained below.

Title 18 U.S.C. §3553(f) provides a "safety valve" for less culpable defendants. <u>United States v. Brownlee</u>, 204 F.3d 1302, 1304

20

(11th Cir. 2000). The "safety valve" was enacted to permit courts to sentence less culpable defendants to guideline sentences instead of imposing mandatory minimum sentences. United States v. Brehm, 442 F.3d 1291, 1299 (11th Cir.), cert. den'd, __ U.S. __, 127 S.Ct. 457 (2006); U.S.S.G. §5C1.2. In order for the safety valve to be applicable, the defendant must meet the following criteria as outlined in 18 U.S.C. §3553(f)(1)-(5):

> (1)   the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2)   the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3)   the offense did not result in death or serious bodily injury to any person;
>
> (4)   the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. §848; and
>
> (5)   not later than the time of the sentencing hearing, the defendant truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Brownlee, supra at 1304; United States v. Milkintas, 470 F.3d 1339, 1344 (11th Cir. 2006); U.S.S.G. §5C1.2.

In this case, the movant cannot satisfy the first requirement for application of the safety valve. This is so because he had two prior convictions, each of which were properly scored one criminal history point, as noted previously in this Report. As a result, movant had a total of two criminal history points assessed, making him ineligible for application of the safety valve provision of the guidelines. Under these circumstances, counsel was not ineffective for failing to seek application of the safety valve.

Moreover, contrary to the movant's apparent allegation in this collateral proceeding, the movant has the burden of proving the applicability of guideline sections which would reduce his offense level. <u>See</u> <u>United States v. Miller</u>, 78 F.3d 507, 511 (11th Cir. 1996)(citations omitted). The movant has failed to do so here. Consequently, the movant cannot demonstrate either deficient performance or prejudice pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), stemming from counsel's failure to further pursue this nonmeritorious claim. Finally, because the court considered the statutory factors and advisory guidelines in fashioning an appropriate sentence, the movant also cannot prevail on this claim. <u>See</u> <u>United States v. Williams</u>, 456 F.3d 1351, 1371 (11th Cir. 2006); <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005).

In related **claim two**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to argue that movant's due process rights were being violated by the court who imposed a statutory minimum mandatory term of imprisonment.

This argument has been squarely foreclosed by the Eleventh Circuit, which has held that the minimum mandatory sentence required for violation of 21 U.S.C. §841(b)(1)(A), the offense of conviction here, does not violate due process or equal protection. <u>See</u> <u>United States v. Solomon</u>, 848 F.2d 156, 157 (11th Cir. 1988); <u>United States v. Warthen</u>, 323 Fed.Appx. 772, 773 (11th Cir. 2009); <u>United States v. Dorval</u>, 283 Fed.Appx. 745, 747 (11th Cir. 2008).

Moreover, as previously discussed in this Report, even post-<u>Booker</u>, the court was precluded from departing below the statutory minimum mandatory term of 120 months in prison. <u>See</u> <u>United States v. Ciszkowski</u>, 492 F.3d 1264, 1270 (11th Cir. 2007); <u>Kimbrough v. United States</u>, 552 U.S. 85 (holding that while district courts may grant variances, they are still constrained by statutory mandatory minimums). Consequently, the movant has failed to establish either

deficient performance or prejudice arising from counsel's failure to pursue this nonmeritorious issue. See Strickland v. Washington, supra. He is thus entitled to no relief on this claim.

In **claim three**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to inform him that his plea carried a risk of deportation. (Cv-DE#1:Memo:20). In support of his claim, movant cites the Padilla v. Kentucky, 130 S.Ct. 1473 (2010), in which the Supreme Court held that the Sixth Amendment requires defense counsel to inform a defendant whether his or her plea carries a risk of deportation.

In Padilla, the United States Supreme Court held that "counsel must inform her client when his plea carries a risk of deportation," and that the failure to do so constitutes deficient performance under Strickland. 130 S.Ct. at 1486. The Court did not explicitly address whether Padilla is retroactive. However, it stated "[i]t seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains ... [because] [f]or at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." Padilla, 130 S.Ct. at 1485.

No Circuit Court of Appeals has definitively ruled on Padilla's retroactivity under Teague. See United States v. Hernandez-Monreal, 2010 WL 5027195 at *1, fn (4th Cir. Dec. 6, 2010) (noting "nothing in the Padilla decision indicates it is retroactively applicable to cases on collateral review."). Nor has any Florida District Court completed a Teague analysis of Padilla. However, the Northern District of Florida has examined Padilla under Section 2255's timeliness inquiry, and concluded Padilla does not recognize a "newly recognized" right that would re-start Section 2255's statute of limitations because Strickland provides

23

the underlying constitutional basis for the decision. See <u>United</u>
<u>States v. Macedo</u>, 2010 WL 5174342 (N.D. Fla. Dec. 15, 2010)
(finding <u>Padilla</u> neither recognized a new right nor was made
retroactive to cases on collateral review, and therefore did not
provide an exception to Section 2255's timeliness requirement);
<u>United States v. Millan</u>, 2010 WL 2557699 (N.D. Fla. May 24, 2010)
(noting <u>Padilla</u> does not appear to be a "newly recognized" right
because <u>Strickland</u> provides the underlying basis for the court's
decision, and therefore does not provide an exception to Section
2255's statute of limitations).

District Courts across the country which have addressed
<u>Padilla's</u> retroactivity under <u>Teague</u> are split on the issue. See
<u>United States v. Hough</u>, 2010 WL 5250996 (D.N.J. Dec. 17, 2010)
(<u>Padilla</u> is a new constitutional rule and should not be applied
retroactively); <u>United States v. Perez</u>, 2010 WL 4643033 (D. Neb.
Nov. 9, 2010) (<u>Padilla</u> is a new rule and is not retroactive because
failure to inform a defendant of possible deportation was not
necessarily error in the Eighth Circuit at the time of defendant's
plea); <u>United States v. Gilbert</u>, 2010 WL 4134286 (D.N.J. Oct. 19,
2010) (<u>Padilla</u> is a new rule and should not be applied
retroactively because neither the Third Circuit nor the Supreme
Court had ever decided whether an attorney must make a client aware
of possible immigration consequences); <u>Martin v. United States</u>,
2010 WL 3463949 (C.D. Ill. Aug. 25, 2010) (<u>Padilla</u> is likely not
new and applies retroactively); <u>United States v. Chaidez</u>, 2010 WL
3184150 (N.D. Ill. Aug. 11, 2010) (<u>Padilla</u> does not announce a new
rule and applies retroactively); <u>United States v. Haddad</u>, 2010 WL
2884645 (E.D. Mich. July 20, 2010) (unlikely that <u>Padilla</u> will be
made retroactive); <u>Gacko v. United States</u>, 2010 WL 2076020
(E.D.N.Y. May 20, 2010) (cannot find <u>Padilla</u> is a "newly
recognized" right that was made retroactively applicable).

It is unnecessary to resolve the retroactivity issue here

because, even if <u>Padilla</u> is retroactive, movant is not entitled to relief. <u>See</u>, <u>e.g.</u>, <u>Brown v. United States</u>, 2010 WL 5313546 (E.D.N.Y. Dec. 17, 2010) (declining to engage in a <u>Teague</u> analysis because the petitioner's claim was refuted by the record).

The law is clear that a criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1480-81 (2010); <u>See</u> <u>Lloyd v. McNeil</u>, 2009 WL 2424576 (S.D. Fla. 2009) (defendant has the right to competent advice regarding the choice to accept a plea or go to trial). Advice regarding deportation "is not categorically removed from the ambit of the Sixth Amendment right to counsel," accordingly, <u>Strickland</u> applies to such claims. <u>Padilla</u>, 130 S.Ct. at 1482.

In this case, movant cannot satisfy <u>Strickland's</u> prejudice prong. Assuming counsel misadvised him, movant became aware of the possibility he would be deported when the Court advised of this fact during the plea colloquy. <u>See</u> Cr-DE#45. Movant stated he understood and nevertheless entered his guilty plea. <u>See</u> <u>generally</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)(defendant's declarations in open court during the plea colloquy carry "a strong presumption of verity"). Accordingly, the Court cured any error due to counsel's alleged misadvice and movant's plea was voluntarily entered with full knowledge of its possible deportation consequences. <u>See</u> <u>United States v. Wilson</u>, 245 Fed. Appx. 10 (11th Cir. 2007) (even if counsel was deficient in advising defendant of possible sentencing implications of guilty plea, defendant could not establish prejudice where the district court cured any error by explaining the consequences in detail before accepting the plea); <u>see also</u> <u>United States v. Perez</u>, 2010 WL 4643033 (D.Neb. Nov. 9, 2010) (even if <u>Padilla</u> applies, the court is not convinced the defendant could establish prejudice where two prior charges would likely be reinstated and defendant could well be subject to

25

deportation without the federal conviction at issue); <u>Amreya v.</u> <u>United States</u>, 2010 WL 4629996 (N.D. Tex. Nov. 8, 2010) (movant failed to show prejudice where the trial court advised him of the possibility of deportation as the result of his plea and he testified he understood that consequence); <u>Brown</u>, 2010 WL 5313546 (same).

In **claim four**, the movant asserts he was denied effective assistance of counsel, where his lawyer failed to seek application of the safety valve provision of the guidelines which would have enabled him to obtain a sentence without regard to any statutory minimum mandatory term of imprisonment. (Cv-DE#10:2). The arguments raised herein are a mere reiteration of those raised in relation to claims one and two above, and should be denied for the reasons expressed therein.

In **claim five**, movant claims he was denied effective assistance of counsel, who failed to consult with him regarding the prosecution of a direct appeal until after the 10-day period had expired. (Cv-DE#10:2-3). It should first be recalled that this precise argument, to the extent it is a new claim, is time-barred, as it was never previously argued in the timely filed motion to vacate. Further, movant never claims he requested that counsel file file a notice of appeal.[11]

In <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 478 (2000), the Supreme Court addresses the issue of whether "counsel is ineffective for not filing a notice of appeal when the defendant has not clearly

---

[11]The law is clear that any argument at this juncture that he did in fact request a direct appeal, which argument has not previously been made by the movant before the undersigned, cannot be raised for the first time in objections to this Report. <u>See</u> <u>Starks v. United States</u>, 2010 WL 4192875 at *3 (S.D. Fla. 2010); <u>United States v. Cadieux</u>, 324 F.Supp. 2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987)(<u>quoting</u> <u>Singh v. Superintending Sch. Comm.</u>, 593 F.Supp. 1315, 1318 (D.Me. 1984)).

conveyed his wishes one way or the other," and holds that the appropriate standard of review in such cases is an analysis under Strickland v. Washington, 466 U.S. 668 (1984), which requires that a movant establish that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different.

When considering a claim of ineffective assistance of counsel for failing to file a notice of appeal, courts should determine whether counsel actually consulted with the defendant about the advantages and disadvantages of prosecuting an appeal; and, if not, whether counsel's failure to consult constitutes deficient performance. Roe v. Flores-Ortega, supra.

Counsel's performance is deemed deficient when "there is reason to think either (1) that a rational defendant would want to appeal (for example when there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. The Court notes that a "highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea," but cautions that all relevant factors must be examined. Id.

Once deficient performance is established, the Strickland analysis requires a showing that the defendant was prejudiced as a result. Id. at 484. To establish prejudice, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id.

Noting that evidence that there were nonfrivolous grounds for appeal or evidence that the defendant expressed a desire to appeal

will often be highly relevant, the Court stated that such evidence alone is insufficient to establish prejudice. <u>Id</u>. at 485-486. The inability to specify the points which would have been raised on appeal or to demonstrate meritorious grounds for appeal will not foreclose the possibility that a movant can satisfy the prejudice requirement where there are other substantial reasons to believe that the defendant would have appealed. <u>Id</u>. at 486.

First, the movant does not claim that he requested counsel to file an appeal, but appears to argue generally that counsel failed to consult with him about the advantages and disadvantages of pursuing a direct appeal until after expiration of the appeal period. Even if as the movant states, counsel failed to consult with him about a direct appeal, there is nothing of record to suggest that a rational defendant, like movant here, would have wanted to pursue an appeal or that there were non-frivolous grounds for an appeal, especially in light of the fact that the movant received the statutory minimum mandatory term of imprisonment. Additionally, even if movant had filed an appeal, there is little likelihood that he would have been successful had he raised any of the complaints here on direct appeal. Further, as will be recalled, when asked by the court, after sentence was imposed, whether he wished to file a direct appeal, movant stated unequivocally on the record that he did not want to appeal. <u>See</u> Cr-DE#41:7-8. Consequently, since no showing has been made that he in fact requested that a direct appeal be filed, the court finds that a rational defendant in his position would not have pursued an appeal. Thus, the movant has failed to establish either deficient performance or prejudice arising from counsel's failure to consult with him about an appeal. He is therefore entitled to no relief on this claim.

<u>Evidentiary Hearing</u>

To the extent movant requests an evidentiary hearing on these claim of ineffective assistance of counsel, it should be denied. The movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. See Townsend v. Sain, 372 U.S. 293, 307 (1963). A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As discussed in this Report, the claims raised are unsupported by the record or without merit. No evidentiary hearing is required.

<u>Conclusion</u>

It is therefore recommended that this motion to vacate be denied, and the case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 13th day of January, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Orelvy Carrero-Gomez, <u>Pro Se</u>
     Reg. No. 82940-004
     F.C.I.-Fort Dix
     Post Office Box 2000
     Fort Dix, NJ 08640
     Juan A. Gonzalez, Jr., AUSA
     United States Attorney's Office
     11200 N.W. 20th Street
     Miami, FL 33172

29